**MOORE et al. v. McDUFFIE et al.**
No. 7363.

Circuit Court of Appeals, Ninth Circuit.
June 12, 1934.

George W. Nilsson, of Los Angeles, Cal., for appellants Spangler.

G. V. Weikert, of Los Angeles, Cal., for appellants Moore.

Gibson, Dunn & Crutcher and Guy D. Henry, all of Los Angeles, Cal., for appellee McDuffie.

Wm. J. DeMartini, of Los Angeles, Cal., for appellee Richfield Oil Co.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal by two lessors from an order made by the United States District Court for the Southern District of California, Central Division, affirming findings of a special master appointed by the court to pass upon claims filed by creditors of Richfield Oil Company of California, of which William C. McDuffie had been appointed receiver, to which findings the appellants had filed exceptions.

The claim in each case was for damages for the cancellation of a lease entered into by the respective lessors with Richfield Oil Company of California for rental of a service station.

There is no dispute between the parties as to the facts in the case. On January 15, 1931, William C. McDuffie was appointed receiver of the Richfield Oil Company of California by order of said District Court of the United States. Thereafter an order was entered by the court directing creditors to file claims.

Appellants Owen Moore and Kathryn Moore filed their claim based upon that certain lease, dated July 19, 1929, for a term of ninety-nine years, at rentals graduated from $300 to $500 a month. In addition to the rental provided it was agreed that the lessee should pay a bonus of $12,500 on August 1, 1939. This lease was disaffirmed by the receiver on March 31, 1931, and possession of the premises surrendered on that date.

Appellants Moore served the receiver with a formal notice refusing to accept the surrender and notifying the receiver that they would relet the premises for his account, and would hold the receivership estate in damages for the difference between the old and new rental.

In August, 1931, appellants Moore verbally relet the premises to one Vandeveer at a rental of $200 per month. This tenant remained in possession about four months. In November, 1931, one Gulich went into possession under an oral month to month tenancy at a rental of $200 per month. In appellants' brief it is asserted that the sum of $12,500 was advanced by appellants for the erection of improvements on the property at the request of Richfield Oil Company, but as to this there is no testimony in the transcript. The demand was for $423,550.29.

The evidence in support of the Moore lease consisted of the introduction of the lease and testimony as to renting the premises to temporary tenants as above stated.

The lease provides that the lessee agrees to pay promptly when due, and before the same become delinquent, all taxes, licenses, charges for revenue, and otherwise, assessments and levies, general and special, ordinary and extraordinary, of every kind on the land and improvements and on the leasehold estate and on the interest of the lessors. The lessee is to be allowed a credit of $200 per year thereon and may withhold said sum from the rental falling due on the 1st day of January of each year, commencing with the 1st day of January, 1930. The lease provides that the lessee shall, at its own expense, keep the improvements insured against fire during the demised term, and that in case the lessee shall neglect to do so, the lessors may procure such insurance and add the amount paid therefor to the installment of rent next falling due, with interest thereon at 7 per cent. per annum. It is provided that overdue rent shall bear interest at 7 per cent. per annum. It is further provided that if the lessee shall fail to promptly satisfy any of its obligations, the lessors may advance and pay any moneys necessary to make good such default of the lessee, and that the lessors may, at their option, have the right at all times to pay any rates, taxes, licenses, assessments, water rates, or other charges upon the premises and reversionary interest therein remaining unpaid after the same have become due and payable, and that the amount paid, provided the lessee be chargeable therewith under the lease, including reasonable legal and other expenses, shall be so much additional

rent due from the lessee at the next rent day, with interest thereon at 7 per cent. per annum.

It was further stipulated that the amount of taxes due and payable for the year 1931–1932 on the real property covered by said lease on which said claim of Owen Moore and Kathryn Moore is based, is the sum of $550.29.

No claim is made on account of taxes prior to the fiscal year commencing July 1, 1931. Claimants paid on December 5, 1931, the sum of $275.16, representing the first installment of county taxes on the property in question for the year 1931. The second installment, amounting to $275.13, had not been paid. It was also stipulated that the annual insurance premium for the year 1931–1932 on the property covered by said lease is the sum of $395.20 and that neither Richfield Oil Company of California, nor the receiver for said company, has paid any insurance premium on said property since the 1st day of March, 1931. It does not appear that any insurance premium has accrued or that any insurance premium remains unpaid or that the Richfield Oil Company or its receiver has failed to pay any accrued insurance premium, or that claimants have paid or advanced the amount of any insurance premium.

The matter was referred to a special master whose conclusions were as follows:

"Claimants are entitled to allowance against the receiver in the sum of $300.00 as a charge of operation and administration for occupation by the receiver. See this allowance under the proper heading.

"Claimants are entitled to allowance against the estate in the sum of $75.16, representing taxes paid by them, less a credit of $200.00 allowable under the lease. It is true that claimants have paid only the 1st installment of taxes, amounting to $275.16 and that the credit is, as expressed by the lease, 'a credit of $200.00 per year.' However, the lease permits the withholding of said sum of $200.00 on the 1st day of January of each year. I conclude that the credit of $200.00 should be allowed at the present time on the tax payment of $275.16.

"The remainder of the claim should be disallowed.

"There is no evidence upon which to base any allowance in regard to insurance premiums.

"In view of claimants' notice of June 29, 1931, there has been no acceptance of the surrender, but claimants, by reletting, have elected to stand upon their claim for damages,

and a claim for damages is premature before the end of the original term."

These findings and conclusions were later confirmed by order of the District Court.

The lease which is the basis of the claim of the Spanglers is dated November 28, 1928, and runs for a term of ten years from the completion date of certain improvements, at rentals graduated from $225 to $450 per month, the rental increasing $300 per year or $25 per month, aggregating the total sum of $40,500. The improvements were completed and the lease commenced on April 1, 1929, and ended on March 31, 1939. The lease was disaffirmed by the receiver on March 31, 1931, and the possession of the premises surrendered on that date. It is conceded that there was no acceptance of surrender.

On May 27, 1931, appellants Spangler relet the premises to the Texas Company for a term of five years, commencing June 1, 1931, and ending May 31, 1936, at a rental of $200 per month for the first three years and $225 for the last two years. The amount of damages contingently claimed by appellants was $33,600. At the hearing the amount contended for was reduced to $15,750. It is asserted in the brief of appellants that they expended the sum of approximately $14,000 in erecting and equipping a super service station for the use of the lessees. There is no evidence in the record to show what, if anything, was expended, the only reference to the matter being the testimony of appellant John G. Spangler, as follows:

"* * * I had that property and had a house on it, a two-story apartment, and the Richfield Company wanted that corner. I moved that house off, which I have also taken a severe loss on, to another lot and built the station in strict conformity with their own drawings and plans and put in all the equipment strictly in accordance with their desires. And, of course, it has meant a terrific loss and sacrifice to me to have to take that."

Upon the evidence submitted the master found:

"After disaffirmance the claimant, John G. Spangler, talked with a representative of the receiver in charge of leases, who suggested a lower rent and the said Spangler submitted an amendment to the lease at a reduced rental for a portion of the term, which proposal the receiver declined. The said Spangler asked said representative of the receiver what further steps he should take, stating that he did not wish to release his claim, and said representative told said claimant that he had several alternatives, either to let the premises remain as they were, or to try to relet them, or to file suit each month for the rent, and suggested that said claimant see some of the major oil companies. Said claimant talked with the Sierra Motor Supply, but could not arrange terms for a permanent lease. The aforesaid representative of the receiver stated to said claimant that if the latter should obtain a lower rent, the difference would constitute his damages. Said claimant stated to said representative of the receiver that a reletting at a reduced rental would be a reduction of the damages and the receiver's representative agreed that that would be right and just and that if he should relet at a less rental claimant would have a claim for damages in the amount of the difference. Said claimant told said representative of the receiver several times that he would relet for the account of the lessee. The receiver's representative aforesaid made said statements in the course of his employment and with implied authority. The aforesaid conversations occurred 6 or 8 times soon after the disaffirmance."

The master reported his conclusions as follows:

"The claim should be disallowed in full. There was no acceptance of surrender, but the claim is uncertain and premature. The new lease expires May 31, 1936, while the original lease runs to March 31, 1939."

The findings and conclusions were approved by the District Court.

In neither of these leases was there any special covenant providing for liquidating or ascertaining damages in the event of a breach of the lease.

The decisions of the courts are in conflict upon the question as to whether the receiver's repudiation of a lease constitutes an anticipatory breach, which entitles the lessor to immediate right of action. The courts of some states and the federal courts sitting in such states deny, while in other states they support, the provability of such damages. We do not feel called upon here to examine the various arguments and weigh the decisions presented to determine their relative merits, because we incline to the opinion that the question involved is one of local law, on which the federal court will follow the rule adopted by the courts of the particular state where the premises under the lease in question are situated. The correctness of this rule is indicated by the decision of the Supreme Court of the United States in Gardi-

ner v. Wm. S. Butler & Co., 245 U. S. 603, 38 S. Ct. 214, 62 L. Ed. 505.

Any extended discussion of the subject as to how far state laws and decisions are regarded as binding rules of decisions for federal courts sitting in equity will serve no good purpose here. In as early a case as Mutual Assurance Society v. Watts' Executor, 1 Wheat. 279, 4 L. Ed. 91, the Supreme Court stated that it uniformly acts under the influence of a desire to conform its decisions to those of the state courts, to which it unhesitantly pays great respect. It is true that in the words of the statute adopting state laws as rules of decisions, the phrase "trials at common law" excludes equity. But while the limiting words of the statute exclude suits in equity, the same principles of decision apply and are followed in equity so far as they may without impairing its jurisdiction and power, in the exercise of which it recognizes and follows the law. The distinction is that while equity recognizes rights under state laws, it will not conform equitable remedies and procedure to the state practice and procedure. If there is no federal question to invoke the jurisdiction which rests on diversity only, and there is no federal statute regulating the subject-matter of the suit, the local laws and decisions will be applied. This is true in equity as well as at law. Cyclopedia of Federal Procedure, vol. 2, §§ 403, 404; Mason v. United States, 260 U. S. 545, 43 S. Ct. 200, 67 L. Ed. 396; Walsh v. E. G. Shinner & Co. (C. C. A.) 20 F.(2d) 586.

In each of the claims now before the court there was a reletting for a portion only of the original term of the particular lease; in the case of Moore on the basis of a verbal month to month tenancy, and in that of Spangler, a reletting for a term which expired approximately three years short of the term specified in the original lease. The law is well settled in California that where a lease has been repudiated by a tenant and the premises abandoned, and there are no covenants in the lease to the contrary, the landlord has a choice of two remedies: One, he may rest upon his contract and sue for each installment of the rent as it falls due, or, as in the case at bar, the lessor may take possession of the premises, relet the same, and recover from the tenant any damages suffered thereby. The landlord cannot maintain an action for damages other than one covering a past due installment of rent or other accrued damages. If there are no covenants in the lease providing for the ascertainment or liquidation of the damages, and where the land-

lord has relet the premises for less than the entire term, the lessor cannot recover in installments, but must bring his action at the expiration of the original term, as before this time the damages cannot be ascertained. In re Bell's Estate, 85 Cal. 119, 24 P. 633; Bradbury v. Higginson, 162 Cal. 602, 123 P. 797; Treff v. Gulka, 214 Cal. 591, 7 P.(2d) 697; Phillips-Hollman, Inc., v. Peerless Stages, Inc., 210 Cal. 253, 291 P. 178; Pacific States Corp. v. Rosenshine, 113 Cal. App. 266, 298 P. 155.

In the present case, the appellants having elected to take possession of the premises and relet the same, which has not been done for the full unexpired period, the District Court was correct in concluding that the claims for damages were prematurely brought and that the charge therefor should be disallowed, Cord v. McFie (C. C. A.) 71 F.(2d) 702, this day decided, Phillips-Hollman v. Peerless Stages, Inc., supra.

As to the claims of appellants Moore for payments alleged to have been made for taxes and insurance premiums, in the evidence in the record no error is apparent in the ruling of the District Court.

Affirmed.