CONNECTICUT RAILWAY & LIGHTING CO. *v.*
PALMER ET AL., TRUSTEES.

No. 63. Argued November 10, 14, 1938.—Decided January 3, 1939.

Messrs. *George W. Martin* and *Talcott M. Banks, Jr.* for petitioner.

Messrs. *Hermon J. Wells* and *James Garfield* for respondents.

By leave of Court, Messrs. *Robert G. Dodge* and *Talcott M. Banks, Jr.* filed a brief, as *amici curiae,* on behalf of Howard S. Palmer et al., Trustees of the property of the Old Colony Railroad Co.

MR. JUSTICE REED delivered the opinion of the Court.

This case poses the question of the correct measure of damages allowable to a lessor creditor of a railroad debtor for the rejection of a lease under the reorganization provisions of § 77 of the Bankruptcy Act. The determination depends upon the meaning of the definitive clause "to the extent of the actual damage or injury determined in accordance with principles obtaining in equity proceedings." [1] Certiorari was granted, under § 240a of the Judicial Code, because the case involves an important question of federal law which should be settled by this Court.

On December 19, 1906, the Connecticut Railway and Lighting Company, petitioner here, leased certain gas, electric and street railway properties for 999 years to the Consolidated Railway Company, predecessor of the New York, New Haven and Hartford Railroad Company, hereinafter referred to as the New Haven. By a subsequent assignment the New Haven was divested of everything except the transportation properties involved here. On February 28, 1910, these were transferred to a wholly-owned subsidiary of the New Haven. Some question arose in the reorganization proceedings as to the New

---

[1] 49 Stat. 911, 914; 11 U. S. C. § 205 (b).

Haven's liability on the 1906 lease after this transfer to its subsidiary. The lower court, however, held the New Haven liable as lessee, and, no attack having been made upon this ruling, we treat, without further consideration, the Connecticut Railway as a lessor and the New Haven as lessee.

The lease gave the lessor the option to terminate, on default of the lessee, and to repossess the property "without prejudice to its right of action for arrears of rent or breach of covenant." It contained no provision for liquidation of damages for breach of the entire lease.

The New Haven agreed to pay all taxes on the property and on the lessor's income from the property. It also paid $1,049,563.50 annually for the street railways. Of this amount, $504,975 was intended to provide for the payment of interest on the Connecticut Railway's bonds and for payments into a sinking fund. These interest and sinking fund payments created a claim upon the lessor for the contents of the fund at the date of payment of the bonds. The arrangement looked to the cancellation of the bonds in 1951 by the New Haven's payments, and the issuance by the Connecticut Railway of new bonds in their place. The delivery to it of these bonds, the New Haven agreed, would liquidate its claim for the contents of the sinking fund. In effect the annual reserved rent would then be considerably decreased, for the interest and sinking fund payments would be for its benefit as owner of the new bonds.

On October 23, 1935, the New Haven filed its petition under § 77 of the Bankruptcy Act. The petition was approved and the respondents were appointed trustees. On December 18, 1935, they rejected the 1906 lease with the approval of the court. On November 16, 1936, the Connecticut Railway repossessed the street railway properties.

The Connecticut Railway filed claims against the New Haven's estate for numerous items, among them damages for breach of the lease and for deficiencies in property returned. It claims $23,190,314.73 as damages for rejection of the lease. This sum is alleged to be "the difference between the present worth of rent and of rental value for the balance of the term of the lease, liquidated by discounting at 4%."

The District Court held that under § 77 the lessor is a creditor for actual damages accruing from the rejection of the unexpired lease to the latest practicable date in the reorganization for presentation of lessors' claims. Damages were measured by the difference between the rent reserved in the lease and the net earnings of the property. The court allowed the amount proved up to June 20, 1937, with leave to the Connecticut Railway to apply for further hearings to liquidate damages suffered after that date.

The Circuit Court of Appeals affirmed, approving the trial court's exclusion of any future damage which had not accrued up to the latest possible hearing in the proceedings.

*First.* The claim for deficiencies in the property returned to petitioner is not properly before this Court. The petition for certiorari did not include the claim among the questions presented or reasons for the issuance of the writ. It was listed as one of three rulings below. The first related to rent accrued to petition filed, the second to deficiencies in property returned, and the third to damages for rejection of the lease. Nowhere in the petition was there complaint as to the first two items. Clearly the petition sought review solely of the decree in so far as it limited petitioner's claim under § 77 for damages from rejection of the unexpired lease. As clearly, certiorari was granted to review only the matter which this Court was advised aggrieved petitioner. *Johnson* v. *Manhattan Ry. Co.,* 289 U. S. 479, 494; *General Talking Pictures Co.* v. *Western Electric Co.,* 304 U. S. 175, 177–9.

Petitioner relies upon *Washington, V. & M. C. Co.* v. *National Labor Relations Board,* 301 U. S. 142, 146. Neither the language of that case nor the authorities there cited in support of the refusal to review a claim not mentioned give vitality to the suggestion of the petitioner that a mere reference in a petition for certiorari to a ruling, without a request for review, will cause its consideration.

*Second.* Under the Bankruptcy Act, prior to the amendment of § 63 (a) by the Act of June 7, 1934,[2] a claim for future rent was not provable.[3] A covenant, however, creating a liability for damages on the filing of a petition in bankruptcy, measured by the difference between the present fair value of the remaining rent and the present fair rental value of the premises for the balance of the term, resulted in a provable claim.[4] This condition made for inequality among both creditors and bankrupts, since

---

[2] 48 Stat. 923–924. "Sec. 4. (a) Section 63 (a) of the Act of July 1, 1898, entitled 'An Act to establish a uniform system of bankruptcy throughout the United States', approved July 1, 1898, as amended, is amended to read as follows: '(a) Debts of the bankrupt may be proved and allowed against his estate which are . . . (7) claims for damages respecting executory contracts including future rents whether the bankrupt be an individual or a corporation, but the claim of a landlord for injury resulting from the rejection by the trustee of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall in no event be allowed in an amount exceeding the rent reserved by the lease, without acceleration, for the year next succeeding the date of the surrender of the premises plus an amount equal to the unpaid rent accrued up to said date: *Provided,* That the court shall scrutinize the circumstances of an assignment of future rent claims and the amount of the consideration paid for such assignment in determining the amount of damages allowed assignee hereunder: *Provided further,* That the provisions of this clause (7) shall apply to estates pending at the time of the enactment of this amendatory Act.' "

The amendments of June 18, 1934, c. 580, 48 Stat. 991, June 5, 1936, c. 512, § 1, 49 Stat. 1475, and June 22, 1938, c. 575, 52 Stat. 840, are immaterial upon this point.

[3] *Manhattan Properties* v. *Irving Trust Co.,* 291 U. S. 320, 330.

[4] *Irving Trust Co.* v. *Perry Co.,* 293 U. S. 307, 310.

498

recovery by claimants depended upon the artistry with which their leases were drafted and discharged bankrupts were often left with surviving claims for rent, unduly burdensome upon their efforts at self-rehabilitation.[5] Everyone interested in bankruptcy problems had long been familiar with the future rent situation and its ramifications into the fields of anticipatory breach of executory contracts and the provability of contingent claims.[6]

During the years 1933 to 1935 the Congress dealt on several occasions with landlords' claims for future rent. The Act of March 3, 1933, made provision for the relief of individual debtors, agricultural and non-agricultural, and for railroad reorganization. Section 74 defined creditors thus: "The term 'creditor' shall include for the purposes of an extension proposal under this section all holders of claims of whatever character against the debtor or his property including a claim for future rent, whether or not such claims would otherwise constitute provable claims under this Act. A claim for future rent shall constitute a provable debt and shall be liquidated under section 63 (b) of this Act."[7] Similarly the railroad reorganization section treated of future rents in sub-sections 77 (b), (h) and (j), hereafter more fully considered. By the decision of *Manhattan Properties* v. *Irving Trust Co.*, on January 10, 1934, the difficulties of lessors were sharply emphasized. The Act of June 7, 1934, supplied procedure for corporate reorganization with arrangements permitting the proof of claims for future rent.[8] These provisions have been upheld.[9]

---

[5] *City Bank Co.* v. *Irving Trust Co.*, 299 U. S. 433, 437.

[6] Cf. *Manhattan Properties* v. *Irving Trust Co., supra; Maynard* v. *Elliott*, 283 U. S. 273, 278; *Central Trust Co.* v. *Chicago Auditorium Assn.*, 240 U. S. 581, 589–90.

[7] 47 Stat. 1467–68.

[8] "In case an executory contract or unexpired lease of real estate shall be rejected . . . any person injured by such rejection shall, for all purposes of this section and of the reorganization plan, its acceptance and confirmation, be deemed to be a creditor. The claim

The first provisions for proof of claims for future rent in railroad reorganizations appeared in the Act of March 3, 1933, simultaneously with the broadening of the Bankruptcy Act to include the railroads as debtors. This act included § 74 which enlarged the bankruptcy definition of creditor. For creditors of this type in railroad reorganizations, the enactment was equally broad.[10] The legislative history discloses nothing as to the motives which prompted the inclusion of the language. In the

of a landlord for injury resulting from the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall be treated as a claim ranking on a parity with debts which would be provable under section 63 (a) of this Act; but shall be limited to an amount not to exceed the rent, without acceleration, reserved by said lease for the three years next succeeding the date of surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs, whether before or after the filing of the petition, plus unpaid rent accrued up to such date of surrender or reentry: *Provided*, That the court shall scrutinize the circumstances of an assignment of future rent claims and the amount of the consideration paid for such assignment in determining the amount of damages allowed assignee hereunder." 48 Stat. 915.

"(h) Upon final confirmation of the plan, . . . the property dealt with by the plan, when transferred and conveyed by the trustee or trustees to the debtor or the other corporation or corporations . . . shall be free and clear of all claims of the debtor, its stockholders and creditors . . ." 48 Stat. 920.

[9] *City Bank Co.* v. *Irving Trust Co.*, 299 U. S. 433; *Kuehner* v. *Irving Trust Co.*, 299 U. S. 445.

[10] 47 Stat. 1475, 1480, § 77, "(b) . . . The term 'creditors' shall, . . . include . . . all holders of claims, interests, or securities of whatever character against the debtor or its property, including claim for future rent, whether or not such claims, interests, or securities would otherwise constitute provable claims under this Act."

"(h) . . . The confirmation of the plan shall discharge the debtor from its debts except as provided in the plan. . . ."

"(j) Upon the confirmation of the plan the property dealt with by the plan, . . . shall, as the court may direct, be free and clear of all claims of the debtor, its stockholders and creditors, . . ."

Act of August 27, 1935, these clauses were amended to read as they now stand but again nothing has been found commenting upon the reasons for their adoption in either the original or present form. Changes of interest here from the 1933 language were proposed by the Federal Coördinator of Transportation,[11] but they were not deemed of sufficient importance by him to merit particular comment. The Committee on the Judiciary of the House of Representatives held hearings and reported a bill, based on the Coördinator's draft, with the language, here important, changed to the exact wording of the Act

[11] House Document No. 89, 74th Congress, 1st Session, Appendix X, page 229.

Those affecting the language of the Act of March 3, 1933, quoted in note 10, *supra*, were as follows:

"The term 'creditors' shall include for all purposes of this section all holders of claims of whatever character against the debtor or its property, whether or not such claims would otherwise constitute provable claims under this Act, including the holder of a claim under a contract executory in whole or in part including an unexpired lease." *Id.* p. 231.

"In case an executory contract or unexpired lease of property shall be rejected . . ., any person injured by such nonadoption or rejection, shall, for all purposes of this section be deemed to be a creditor to the extent of such damage or injury, provided, that the judge shall consider the circumstances of an assignment of future rent claims and the amount of consideration paid for such assignment in determining the amount of damages allowed an assignee hereunder and may limit such damages to the actual consideration paid for such claims." *Id.* pp. 231–2.

". . . the property dealt with by the plan, when transferred and conveyed . . . shall be free and clear of all claims of the debtor, its stockholders and creditors, . . . The final decree shall discharge the debtor from its debts and liabilities and shall terminate all rights and interests of its stockholders and creditors except as provided in the plan or as may be reserved as aforesaid." *Id.* p. 239.

Comment of Coördinator, *Id.* p. 100 *et seq.*

of August 27, 1935. Nothing which illumines this problem appears in the hearings [12] or committee report.[13]

The portions of the act which we must consider are as follows:

"Sec. 77. Reorganization of railroads . . . (b) . . . The term 'creditors' shall include . . . the holder of a claim under a contract executory in whole or in part including an unexpired lease.

" . . . In case an executory contract or unexpired lease of property shall be rejected . . . any person injured by such nonadoption or rejection shall for all purposes of this section be deemed to be a creditor of the debtor to the extent of the actual damage or injury determined in accordance with principles obtaining in equity proceedings. . . .

"(f) . . . The property dealt with by the plan, when transferred and conveyed . . . shall be free and clear of all claims of the debtor, its stockholders and creditors, and the debtor shall be discharged from its debts and liabilities, . . ." 49 Stat. 911, 913, 920.

It is first to be noted that the successive acts of the Congress, on extension of individual debts and corporate and railroad reorganization, are directed generally at the rehabilitation of debtors.[14] As one of the means used consistently to accomplish this, claims for future rent are made provable and dischargeable, so that the debtor would not be burdened with the rent obligation after discharge.[15]

---

[12] Hearings before the Committee on the Judiciary on H. R. 6249, 74th Congress, 1st Session.

[13] H. R. Report No. 1283, 74th Congress, 1st Session.

[14] Cf. *Adair* v. *Bank of America National T. & S. Assn.,* 303 U. S. 350.

[15] Cf. *Manhattan Properties* v. *Irving Trust Co.,* 291 U. S. 320, 331-2.

Next, the limitation of the amount of future rent recoverable to one year in § 4 and to three years in § 1 [77B(b) ] of the Act of June 7, 1934, leaves no doubt that the Congress deemed a definite formula advantageous in bankruptcy and general corporate reorganization. Its failure to provide an exact measure in railroad reorganizations shows it was not there considered appropriate. Finally, it seems obvious that the changes of the Committee on the Judiciary in the wording of the Coördinator's draft, by which "actual" was inserted before "damage" and "determined in accordance with principles obtaining in equitable proceedings" added as a guide, were intended to call emphatically to the attention of those administering the reorganization section the requirement that only those damages susceptible of definite proof should be allowed. We cannot read a limitation on damages into the language as enacted. As reorganizations had been traditionally carried on in equity and would be carried on in a bankruptcy court with equity powers, it was natural to add the clause as to equitable proceedings. Leases were placed upon the same basis as executory contracts.

The New Haven urges that the reference to "equitable proceedings" is to receiverships in equity, as such receiverships were mentioned twice in the same subsection. The use of "equitable proceedings" instead of "equity receiverships" supports the view that something different was intended. The equitable principle for the allowance of claims for future rent the New Haven finds in *Pennsylvania Steel Co.* v. *New York City Ry. Co.*, 198 F. 721, expressed as follows, pages 741–742,

"Claims which when presented within the time limited by the court for their presentation are certain or are capable of being made certain by recognized methods of computation, should be allowed. Claims which are not then certain should be disallowed because they afford no basis for making dividends."

The conclusion of the District Court, as affirmed by the Circuit Court of Appeals, is then offered as the correct rule in this case. That conclusion was summarized by the brief of the New Haven in these words:

"The court thereupon held that damages measured by the difference between the rent reserved and the earnings of the property up to the date of hearing should be allowed, with the further right to the claimant, in common with all other claimants under rejected leases, to apply for a subsequent hearing at the latest practicable date to be determined by the court during the reorganization proceedings for the purpose of proving similar damages up to that date."

Damages for loss of rent which fell due after the latest practicable date for filing claims were thus barred from proof, and under the quoted language of subdivision (f), the right to recover for such injury from the debtor after reorganization was destroyed.

We are of the opinion that this construction of the statutory provisions for the measurement of damages for loss of future rent is erroneous. Notwithstanding its extended term, the lease created an obligation under the present Bankruptcy Act upon the New Haven entitled to share in its assets upon reorganization on an equality with the claims of other creditors.

While it could be said that the general rule in equity receiverships was that only accrued damages could be proven, there was no discernible equitable rule for the determination of damages for rejection or nonadoption of an unexpired lease. The actual damages from the breach were not determined. At the most an arbitrary time limit was set on proof. The reference to equity proceedings does not, in our opinion, refer to any rule for the measure of damages in equity receiverships. In their administration of estates, whether railroad or non-railroad, claims for future rents depended for their prova-

504

bility upon the fact of reëntry,[16] the existence of a clause for indemnity in case of breach,[17] or the incidence of the maturity of the rent claim under the local law.[18]

The damages recovered by an injured party have always been limited to his "actual" damages. There is nothing to indicate that the Congress intended to have "actual" interpreted as "accrued." The measure of damages applied by the courts for the breach of a lease, where damages are permitted, is uniform. In *William Filene's Sons Co.* v. *Weed*[19] and in *Kuehner* v. *Irving Trust Co.*,[20] this Court said in analogous situations that the measure was the present value of the rent reserved less the present rental value of the remainder of the term.[21] The English Bankruptcy Act permits proof of future rents, as any claim is provable which is "as to mode of valuation, capable of being ascertained by fixed rules or as matter of opinion."[22] The measure of damages is the same.[23] The difficulties of proof are well recognized.[24]

---

[16] *Gardiner* v. *Butler & Co.*, 245 U. S. 603, 605.

[17] *Wm. Filene's Sons Co.* v. *Weed*, 245 U. S. 597, 602.

[18] *Gardiner* v. *Butler & Co.* 245 U. S. 603, 605; *Wake Development Co.* v. *Auburn-Fuller Co.*, 71 F. 2d 702; *Moore* v. *McDuffie*, 71 F. 2d 729; *In re McAllister-Mohler Co.*, 46 F. 2d 91; see Gerdes, Corporate Reorganizations, §§ 687–88.

[19] 245 U. S. 597, 602.

[20] 299 U. S. 445, 450.

[21] Cf. *Grayson* v. *Mixon*, 176 Ark. 1123; 5 S. W. 2d 312; *Curran* v. *Smith-Zollinger Co.*, 18 Del. Ch. 220; 157 A. 432; *Wilson* v. *National Refining Co.*, 126 Kan. 139; 266 P. 941; *Womble* v. *Leigh*, 195 N. C. 282; 142 S. E. 17; *In re Reading Iron Works*, 150 Pa. 369; 24 A. 617; Sutherland, Damages, Vol. III, Fourth Ed., § 844.

[22] Act of 1914, 4 and 5 Geo. V, c. 59, § 30 (8) (c).

[23] *In re Tickle*, 3 Morr. 126; *Ex parte Llynvi Coal & Iron Co.*, L. R. 7 Ch. App. 28; *In re Hinks, Ex parte Verdi*, 3 Morr. 218; *In re Carruthers*, 2 Mans. 172; cf. *Hardy* v. *Fothergill*, L. R. 13 A. C. 351, 358, where a claim on covenant to deliver well repaired at end of fifty-year term was held provable.

[24] *Pennsylvania Steel Co.* v. *New York City Ry. Co.*, 198 F. 721, 759.

The same rules apply to executory contracts. In *Kuehner* v. *Irving Trust Co.*[25] this Court pointed out as one of the reasons for upholding the validity of a statutory formula the uncertainty as to the loss entailed by abrogation of leases, an uncertainty growing greater as the remainder of the term lengthens. "Testimony as to present rental value," it was said, "partakes largely of the character of prophecy . . ." A remainder of fourteen years was there involved. Here there is a remainder of 969 years. That lease was for a store in the City of New York. Evidence of the value of unexpired terms of street railway leases would be even more difficult to produce, as possible lessees are limited in number. Since insolvencies are more frequent in economic depressions and since, as a consequence, estimates of the rental value of the remainder of the term are given under subnormal business conditions, the difficulties are multiplied.

Judges in equitable proceedings will have the advantage of evidence in applying the usual rules as to the measure of damages. It is well understood that such evidence must show damages to reasonable certainty. Mere "plausible anticipation" does not merit consideration nor are flights into the realm of pure speculation entitled to be treated as evidence.[26] The determination of the amount to be allowed as the damage will be based on evidence which satisfies the mind.

*Third.* We comment briefly on two other points raised. The betterments and sinking funds having come into the possession of the lessors by the terms of the lease are not to be considered as offsets against the claim of the lessor. Their possession by the lessor increases the earning power of the assets to the benefit of the lessee.

[25] 299 U. S. 445, 454.

[26] Cf. Sutherland, Damages, Vol. I, Fourth Ed., § 121.

Since subsection (1) of § 77 [27] is general in form and is specifically subordinated to the other provisions of the section, including subsection (b), § 63 (a) (9) of the Bankruptcy Act is inapplicable to the present controversy.

As certiorari was sought and allowed only upon so much of the order of the Circuit Court of Appeals as affected the measure of the lessor's damage for rejection of the lease in question, the order of that court is reversed only in that particular and this case is remanded to the District Court for further proceedings in accordance with the order and opinion of the Circuit Court of Appeals as herein modified and of this Court.

*Reversed.*

MR. JUSTICE McREYNOLDS is of opinion that the judgment of the court below should be affirmed.

MR. JUSTICE BRANDEIS took no part in the consideration or decision of this case.

---

[27] 49 Stat. 922, "(1) In proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition was filed."