39 F.Supp. 753 (1941)
In re DANT & DANT OF KENTUCKY.
JEFFERSON STORAGE CORPORATION
v.
KESSLER.
No. 13343.
District Court, W. D. Kentucky.
July 15, 1941.
*754 Arthur W. Grafton, of Louisville, Ky., for Dant & Dant.
John E. Tarrant, of Louisville, Ky., for B. & N. Corporation.
D. A. Sachs, Jr., of Louisville, Ky., for trustee.
David R. Castleman, of Louisville, Ky., for Jefferson Storage Corporation.
MILLER, District Judge.
This matter is before the Court on petitions to review the Referee's order of March 4, 1940 which allowed in part and disallowed in part proof of claim filed by Jefferson Storage Corporation, a creditor, in the total amount of $194,118.20. The Referee's order allowed the claim in the amount of $67,354.51. Petitions for review were filed by both the trustee in bankruptcy who contends that the claim should have been disallowed in its entirety, and by Jefferson Storage Corporation which claims that the claim should have been allowed in its entirety.
The claim arises out of a storage contract between the bankrupt Dant and Dant of Kentucky, a distillery, and the claimant Jefferson Storage Corporation. This contract executed on December 14, 1936, was intended by the parties to provide storage facilities for the whiskey to be produced in *755 the bankrupt's distillery. The distillery and the warehouses of the Storage Corporation were on adjoining tracts of land. The contract imposed upon the Storage Corporation the duty of providing storage facilities for the distillery as therein specified, for a period of ten years, and required the distillery to use a certain minimum of such storage facilities annually, and guaranteed to the Storage Corporation an average monthly income on Dant and Dant storage of not less than $3,000 for each calendar month beginning with the month of January 1938. With the exception of storage of 631 barrels of whiskey for a few months, the storage facilities of Jefferson Storage Corporation were not used by Dant and Dant. The Distillery Company was adjudicated a bankrupt on June 21, 1939. The total claim of Jefferson Storage Corporation in the amount of $194,118.20 is composed of a claim in the amount of $53,825 being guaranteed storage for the period of January 1, 1938 through June 21, 1939, the date of bankruptcy, and of a claim in the amount of $140,293.20, being guaranteed storage as provided by the contract for the period of June 21, 1939 through December 31, 1946, discounted to its present cash value as of June 21, 1939. The Referee construed the storage contract as obligating the bankrupt to pay a minimum guaranteed storage of $25,077.60 per year instead of $36,000 per year as claimed by the Storage Corporation. The first part of the claim was allowed in the amount of $37,629.51. Using the same guaranteed minimum and discounting the future payments at 6%, instead of at 4% as claimed by the Storage Corporation, and estimating future operating expenses at $20,062 per year, instead of $12,000 per year as claimed by the Storage Corporation, the referee liquidated and allowed the future damages as set up by the second part of the claim, in the amount of $29,725.
The trustee contends that the claim should be rejected in its entirety because at the time when the storage contract was entered into, Ganellin, the President of Dant and Dant, required the Storage Corporation to execute a secret collateral agreement by which certain profits of the Storage Corporation would be paid to Ganellin personally, or to his appointee after his death, as long as the storage contract was in existence. The Referee found that such a collateral agreement was secretly entered into, without the knowledge or consent of the stockholders or officers of Dant and Dant, that this made the storage contract a voidable one which could be rescinded by the distillery but the option to rescind had been waived by it failing to take any action to do so for many months after the facts had been brought to the attention of the interested parties. The Trustee contends that the right of the bankrupt to rescind the contract in its entirety was not waived, and that no claim against the bankrupt exists by virtue of the alleged fraudulent storage contract.
It is the settled rule on reviews by the District Court of orders of the referee in bankruptcy that the findings of fact by the referee are conclusive unless clearly erroneous, and that the District Judge should not disturb such findings of fact by the referee unless there is most cogent evidence of mistake or miscarriage of justice. General Orders in Bankruptcy XLVII, 11 U.S.C.A. following section 53; Kowalsky v. American Employers Insurance Co., 6 Cir., 90 F.2d 476; Ohio Valley Bank Co. v. Mack, 6 Cir., 163 F. 155, 24 L.R.A.,N.S., 184; Rasmussen v. Gresly, 8 Cir., 77 F.2d 252. The evidence is conflicting on the issue of whether or not the collateral agreement providing for individual profit to Ganellin was secretly and fraudulently entered into. It appears entirely sufficient to sustain the referee's finding that it was a secret and fraudulent agreement on the part of Ganellin, the bankrupt's president, and this finding of fact by the referee must therefore be sustained.
It is a well-settled principle of the law of principal and agent that a contract made by an agent in the name of his principal, in which inures to the agent a secret profit, not known to or acquiesced in by the principal, is a voidable contract on the part of the principal upon discovery of the facts. Wardell v. Union Pacific R. Co., 103 U.S. 651, 26 L.Ed. 509; Thomas, Trustee, v. Brownville, etc., R. Co., 109 U.S. 522, 3 S.Ct. 315, 27 L.Ed. 1018; Bank of Louisville v. Gray, 84 Ky. 565, 2 S.W. 168; Johnson v. Mitchell, 192 Ky. 444, 233 S.W. 884; Louisville Point Lumber Co. v. Thompson, 202 Ky. 263, 259 S.W. 345. Upon the discovery of the fraud the injured party has the option of two remedies, namely  (a) he can disaffirm the contract by tendering back the property received and asking for a rescission of the contract obligation; or (b) he can affirm the contract and seek damages for his injuries either by an action for deceit or by way of defense or counterclaim in a suit brought against *756 him for failure to completely perform the contract. Ades v. Wash, 199 Ky. 687, 251 S.W. 970; Kentucky Electric Development Co.'s Receiver v. Head, 252 Ky. 656, 68 S.W.2d 1. There are some exceptions to the general rule as stated. At times, the injured party can disaffirm the contract without tendering back the property received, as where the property received is less than what he would be entitled to upon the disaffirmance of the contract. Fox v. Hudson's Ex'x, 150 Ky. 115, 150 S.W. 49, Ann.Cas.1914A, 832; Kirchdorfer v. Heer, 189 Ky. 442, 225 S.W. 141. At times, a partially completed transaction can be carried to completion without waiving the right to rescind the remaining portion of the contract, because under the particular conditions existing it is to the interest of both parties that such transactions be not abandoned or junked in their partially completed status. United States Shipping Board Emergency Fleet Corp. v. South Atlantic Dry Dock Co., 5 Cir., 300 F. 56. In the present case the bankrupt learned of the secret profit agreement on or about July 27, 1937. It had the option at that time to either rescind the contract in its entirety or to go ahead with it and recover in damages. Business policies, such as avoidance of litigation, difficulty in arranging for other storage facilities, absence of any material damage, and certain benefits accruing from favorable provisions in the contract, may have influenced and even been the deciding factors in its decision not to rescind the contract. But such factors were essentially ones presenting pure questions of business judgment; they were not cases, as referred to above, which provide an exception to the general rule. From July 27, 1937 to a time subsequent to bankruptcy on June 21, 1939 (almost two years), the bankrupt permitted the contract to remain in force and effect and was assured of the benefits which it provided, which included storage facilities at a 5 cent rate, when the prevailing rate in the industry was from 10 to 12 cents. This was in legal effect a clear exercise of its option to consider the contract as in effect and to rely upon its claim for damages. It is too late for the trustee in bankruptcy to rescind the contract following bankruptcy when the need of its favorable provisions has disappeared.

Construction of the Storage Contract.
The parties differ as to the proper construction of the storage contract with respect to both (a) rate of storage to be charged the bankrupt, and (b) the minimum monthly guarantee for which the bankrupt was liable under the facts as they developed. These two questions must be first disposed of before the amount of the Storage Corporation's claim can be correctly computed. Two fundamental rules govern the Court in the construction of a written contract, namely: (1) The instrument is to be construed in accordance with the intent of the parties, and (2) in construing any written instrument it is to be considered in its entirety.
Applying these rules it seems plain that the bankrupt was to pay the Storage Corporation only 5 cents per barrel per month for storage space. Although the warehouse receipts issued under the contract provide for 10 cents per month, the present claim is not under warehouse receipts, but is by virtue of the provisions of the storage contract. The storage contract at no place calls for the bankrupt to pay 10 cents per month. It refers to "the storage rate of ten cents per month (provided in the warehouse receipts)", Section 17(c), and allots the first 5 cents actually collected to the Storage Corporation. The second 5 cents is allotted to the bankrupt. It was clearly the intention of the parties that the second 5 cents should not be paid by the bankrupt. It would involve useless bookkeeping to pay it to the Storage Company and have it immediately refunded. The second paragraph of Section 17(c) deals with the actual payments when due, and specifically provides that only 5 cents per barrel per month is to be paid to the Storage Company "as the Storage Company's part" of the storage. The second paragraph of Section 17(d) provides that if the receipts are sold and the Storage Company collects 10 cents a month from the owner, the 10 cents is refunded to the bankrupt on whiskey for which the storage has already been paid by the bankrupt, and the 10 cents is divided between them on whiskey for which storage has not been paid by the bankrupt. In any event the Storage Corporation is paid only 5 cents per barrel per month. Section 17 (e) provides that the 10 cent rate will be in effect if and after the storage contract is terminated "instead of the five cents provided for by this contract." The Court accordingly construes the contract as providing for storage between the Storage Corporation and the bankrupt at the rate of 5 cents per barrel per month while the contract was in force and effect.
*757 Applying these same rules of construction, it also seems plain that the bankrupt was to pay the Storage Corporation a minimum of $3,000 a month for a minimum warehouse space for 60,000 barrels whether the space was used or not. The Storage Corporation agreed to always have reserved for the bankrupt warehouse space for 60,000 barrels (Section 17(b), the net charge for the storage was to be 5 cents a barrel per month (Sections 17(c), (d), and (e), and the bankrupt was to pay a minimum of $3,000 per month (Section 17(c) in consideration of the reservation of space for 60,000 barrels (Section 17(b) whether it used the reserved space or not. Since the storage contract was entered into for the purpose of storing the bankrupt's whiskey as produced, the reservation of space was necessary and had to be paid for whether used or not. Obviously the $3,000 monthly minimum was the reserved space for 60,000 barrels at 5 cents a barrel. The Storage Corporation did not construct all the warehouses contemplated by the contract, and it was found as a fact by the referee that the maximum storage capacity available for the bankrupt was for only 41,796 barrels. It logically follows that the bankrupt should not be required to pay for more than was available for it to use. Accordingly, the referee correctly found the monthly minimum payment to be $2089.80, which totaled $25,077.20 for the year 1938 and the additional sum of $11,842.20 for the period of January 1, 1939 to June 21, 1939, being a total amount due at time of bankruptcy of $36,919.80. Interest at 6% is also properly allowable on the amount of $25,077.60, less credits, for the period of January 1, 1939 to June 21, 1939. So much of the referee's order as allowed this portion of the claim in the total amount of $37,629.51 is approved.

Liquidation of Claim for Future Payments.
The trustee contends that the claim for payments under the storage contract from June 21, 1939 to December 31, 1946 is not a liquidated claim as is required by Section 57, sub. d, of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. d, and should be rejected in its entirety. There is no rule of law which prevents the allowance of future damages resulting from the breach of an executory contract which calls for performance over a period of years in the future. Such damages, if proven to a reasonable certainty, are allowable. The difficulty lies in the nature and sufficiency of the evidence. "Mere `plausible anticipation' does not merit consideration nor are flights into the realm of pure speculation entitled to be treated as evidence. The determination of the amount to be allowed as the damage will be based on evidence which satisfies the mind." Connecticut Railway & Lighting Co. v. Palmer, 305 U.S. 493, 59 S.Ct. 316, 324, 83 L.Ed. 309. This test can be met with respect to damages over a reasonable period of time in the future, since in such cases the plaintiff is not called upon to prove to a dead certainty the amount of damage he will suffer, but is only required to prove a reasonable expectation of loss from the existing facts. Connecticut Railway & Lighting Co. v. Palmer, 2 Cir., 109 F.2d 568, affirmed 311 U.S. 544, 61 S.Ct. 379, 85 L.Ed. 336. In the present case the future period covering the unexpired portion of the contract  through December 31, 1946  is comparatively short and operating costs during that period can be estimated with a fair degree of accuracy. The guaranteed monthly income is fixed. Accordingly, the net profit under the contract which will be lost to the Storage Company can be proven to a reasonable certainty by evidence which satisfies the mind. Such lost profits are a proper item of damage. Union Cotton Co. v. Bondurant, 188 Ky. 319, 222 S. W. 66; Kentucky Utilities Co. v. Warren Ellison Café, 231 Ky. 558, 21 S.W.2d 976; Caudill v. John P. Gorman Coal Co., 242 Ky. 294, 46 S.W.2d 93. Under Section 63, sub. a(9), of the Bankruptcy Act it is a provable claim against the bankrupt estate. Section 103, sub. a(9), 11 U.S.C.A. The referee's ruling to that effect is approved.
The extent to which the claim can be recognized in bankruptcy proceedings depends largely on whether it is treated as a lease, as contended by the trustee, or as an anticipatory breach of an executory contract. Prior to recent amendments of Section 63, sub. a, of the Bankruptcy Act a claim for future rent was not a provable claim in bankruptcy. Manhattan Properties, Inc., v. Irving Trust Co., Trustee, 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824. But Section 63, sub. a, as now amended allows such a claim, but limits it to an amount not exceeding a year next succeeding the date of the surrender of the premises to the landlord. It is settled in Kentucky that to constitute a tenancy of any kind, the tenant must get some definite control and possession of the premises with the intention on *758 the part of the owner to dispossess himself of the premises under consideration. Waller v. Morgan, 18 B. Mon., Ky., 136; Mercantile Realty Co. v. Allen Edmonds Shoe Corp., 263 Ky. 597, 92 S.W.2d 837. That is not the situation in the present case. The referee's ruling that the storage contract did not constitute a lease is approved.
The referee rejected the trustee's contention that the amount of the claim should be credited with the income which the Storage Corporation would receive by using the space reserved for storage from other customers. He held in effect that there was no duty on the part of the claimant to minimize its damage, relying upon Superior Woolen Co. Tailors v. M. Samuels & Co., 219 Ky. 539, 293 S.W. 1078. Such is the Kentucky rule in cases involving leases of real estate, as was that case. See, also, Abraham v. Gheens, 205 Ky. 289, 265 S.W. 778, 40 A.L.R. 186; Devers v. May, 124 Ky. 387, 99 S.W. 255; Lawrence v. Fielder, 186 Ky. 324, 216 S.W. 1068. The rule is based upon the theory that the lessee has purchased an interest in the real estate, which differentiates the case from those involving pure contracts of an executory nature. Since the storage contract is not a lease, the rule of damages applying to broken leases is not applicable. The settled rule applicable to executory contracts covering a period of time in the future is that it is the duty of the party whose contract has been broken to take reasonable steps to minimize his damage. Lewis Co. v. Scott, 95 Ky. 484, 26 S.W. 192, 44 Am. St.Rep. 251; Raleigh v. Clark, 114 Ky. 732, 71 S.W. 857; McFall v. Carroll, 194 Ky. 678, 240 S.W. 367; Nortonville Coal Co. v. Sisk, 145 Ky. 55, 139 S.W. 1086; United States Bond & Mortgage Co. v. Berry, 249 Ky. 610, 61 S.W.2d 293. There are cases in which the particular circumstances make it unreasonable to expect such steps to be taken, as in the cases relied upon by claimant, but such circumstances do not exist in the present case. The warehouses have been built, capital has been invested in them, overhead expenses of repairs, insurance and taxes are necessarily in effect whether the warehouses are operated or not, no additional investment is required to purchase raw materials for manufacturing purposes, the credit risk is for all practical purposes non-existent, and public policy is opposed to such an economic waste as would result if these warehouses were permitted to remain unused until December 31, 1946 if such storage capacity can be utilized. In my opinion this case falls within the general rule which requires the claimant to minimize its damage.
Claimant introduced several witnesses to prove that the damage could not be minimized. Their testimony was directed to the point that at the present and for some years in the future there is no opportunity in this locality for an independent warehouse to obtain storage of bonded whiskey. One reason given was the absence of bottling facilities, which however could be remedied by a reasonable expenditure in comparison with the amount involved. This evidence also overlooks the fact that the prevailing rate at which such storage would be solicited is 10 cents per month, while the present claimant could take such storage at as low a rate as 5 cents per month and not be damaged by the breach of contract. The evidence showed at least two independent warehouses storing bonded whiskey at the prevailing rate. If we consider the fact that many distillery warehouses now house thousands of barrels of whiskey owned by others, for which they charge 10 cents a month, and that under Government regulations bonded whiskey can be transferred from one warehouse to another, it seems most improbable that the storage facilities of the Jefferson Storage Corporation would not be utilized at 5 cents a month. In any event there is no necessity for the claimant to restrict its operations to storage of whiskey. The buildings were formerly used for storage of tobacco, and could be put in condition for that use or general storage with little trouble. It would appear contrary to common knowledge and experience to hold that the warehouses under consideration cannot be put to some use during the coming years that would yield a regular and substantial income. In bankruptcy proceedings the claimant has the burden of liquidating its claim as a condition precedent to its allowance. Section 57, sub. d of the Bankruptcy Act, Section 93, sub. d, 11 U.S.C.A. The referee's order of August 28, 1939 so provided. In the absence of proof to the contrary, it is assumed that for future years the contract value and the market value of the storage space reserved by the bankrupt are the same, and only nominal damages will be allowed the claimant. Palmer v. Connecticut Railway & Lighting Co., supra, 311 U.S. 544, 557, 558, 61 S.Ct. 379, 85 L.Ed. 336. That portion of the claim seeking damages subsequent to June 21, *759 1939 is disallowed, and so much of the referee's order as allowed that portion of the claim to the extent of $29,725 is set aside.