### J. K. PORTER & wife *vs.* MOODY MERRILL.

Suffolk.   Nov. 15, 1877. — June 29, 1878.   COLT & LORD, JJ., absent.

A lease to A. contained a covenant that no assignment of the same should be valid without the consent in writing of the lessor. A. assigned the lease to B. with such consent, and B. assigned it to C. without the assent of the lessor. *Held*, that the covenant was waived by the lessor's acceptance of rent from C. ; and that C. might recover rent subsequently accruing of D., to whom B. had previously leased a por·tion of the demised premises, and who had knowledge of the assignment to C., and had paid him a part of such rent.

A contract in writing to let, for a precise time and at a definite weekly rate, certain specified rooms in a house, divided up into sets of rooms and containing a restaurant, is a valid lease, although the lessor undertakes to serve a private table, and to furnish certain other accommodations, and imposes certain restrictions on the manner of the use and occupation.

A stipulation in a lease of certain rooms in a house, containing a restaurant, and near several hotels and other restaurants, "to serve a private table" therein, is complied with by an offer to send out for a dinner to such a hotel to be served in such rooms.

On the issue whether a servant delivered a certain message, it is within the discretion of the court, in order to show that the servant acted within his authority, to allow the giver of the message to testify what the message was.

WRIT OF REVIEW of a judgment recovered by the defendant in review against the plaintiffs in review, for rent for August and September, 1875, on the following instrument in writing, signed by the plaintiffs in review and Dio Lewis: "Lease of Apartments in the Bellevue. Dio Lewis leases to Mr. and Mrs. J. K. Porter Rooms No. 1 and 2, in the Bellevue, Nos. 17 and 19 Beacon Street, Boston, for the term of twelve months, for forty-four dollars per week, to be paid on the first day of each month. It is agreed that there shall be no cooking in said rooms. It is agreed that if, at any time during the occupancy of said rooms by said lessees, any piece of furniture or carpet, furnished by Dio Lewis or his representative, is soiled or injured beyond ordinary wear, or should a window be left open, and the furniture or building suffer in consequence, said lessees agree to pay the damages. It is agreed that the lessees shall not keep a dog or cat. It is agreed that the lessees shall pay for washing windows, twenty-five cents each. It is agreed that the lessees shall give one full month's notice of their intention to renew this lease, and that, in case they do not give such notice, the lessor or his agent may show said rooms to other applicants during the last month of this lease. It is agreed that the lessees shall pay for gas according to the meter attached to the room. The lessees agree to furnish linen and blankets for the beds, and linen for the table, and silver for the table, and to take care of the silver. The lessor agrees to do the chamber and parlor work, to heat the rooms and serve a private table; and he agrees likewise to keep the linen in condition, all without extra charge. The rent of the above-named premises to commence and possession to be had by the lessees on the first day of October, 1874."

Upon the above instrument was the following indorsement, dated February 9, 1875, and also signed by the plaintiffs in review and Dio Lewis: "It is agreed that the lessees shall remove to the rooms occupied recently by Mrs. S. Willard, in No. 19 Beacon Street, for the residue of the term named in this lease. Lessor agrees to furnish the rooms in No. 19 with the furniture now in No. 17, adding, if required by lessee, an entire new parlor suite, and a centre table for back room, and lace curtains for front parlor with lambrequins for same. It is agreed, that if at any time the lessor shall have a genuine applicant for the future rental of the rooms in No. 19, to which the Porters remove, he may show them, unless the Porters shall decide to remain for another year. But this right shall not begin till the first of June."

Trial in the Superior Court, before *Aldrich*, J., who allowed a bill of exceptions in substance as follows:

The suite of rooms which the plaintiffs in review occupied were in the building numbered 19 on Beacon Street, in Boston, to which the defendant·in review claimed title by virtue of an assignment of a lease in writing and under seal, which had been executed by William W. Warren and Leonard M. Fitch, trustees, to Ruth A. Leonard, dated May 29, 1872, for a term of five years from June 5, 1872, the execution of which was admitted, and by an assignment under seal from Leonard to Dio Lewis, indorsed thereon. The original lease contained a covenant by the lessee to and with the lessors "that she or others having their estate in the premises will not assign this lease, without the consent of said lessors or those having their estate in the premises first being obtained in writing allowing thereof," and also a condition that "if said lessee or his representatives or assigns do or shall neglect or fail to perform and observe any or either of the covenants contained in this instrument," then the lessors might enter and determine the lease. The assignment to Lewis was assented to by the lessors in writing under seal, and signed by them, as follows:

" The foregoing assignment is assented to on the condition that no further alterations on the within-described leased premises shall be made by said Lewis, the assignee of this lease, without our written consent, and that the difference on the cost of

insurance of $10,000, in consequence of the opening in the division walls between Nos. 17 and 19, and the requirements of the city of Boston as to proper doors in said openings, shall be borne and fulfilled by Dio Lewis, the said assignee."

Upon the lease was the following indorsement, dated October 26, 1872, and signed and sealed by Lewis:

" The within lease having been assigned to me with consent of the trustees and lessors of said lease under certain conditions, I agree to those conditions and do assume and agree to fulfil all the covenants and stipulations thereof by said within lessee to be performed."

Lewis held the premises under the assignment to him until, by an indenture between Lewis and the defendant in review, dated and executed July 6, 1875, the lease was assigned by Lewis to Merrill; and, within a week thereafter, J. K. Porter, the first named plaintiff in review, had such notice of the assignment, as would be inferred from his warning from the servants that Merrill had bought the interest of Lewis in the premises.

No assent in writing was made to this assignment to the defendant in review, but on August 5, 1875, Merrill paid one month's rent then due according to the terms of the original lease, which was accepted by the lessors, and the rent for subsequent months, which was accepted in like manner. Porter, early in August, 1875, paid to the agent of Merrill his rent for the month of July.

The plaintiffs in review requested the judge to instruct the jury that the original action could not be maintained, because no valid assignment of the leasehold estate, to which the defendant in review claimed title, had ever been made to him, by reason of the absence of an assent in writing by the original lessors; because the instrument declared upon had never been assigned by Lewis to Merrill otherwise than by operation of law by the assignment of the reversion; and because the instrument declared upon was not a lease demising an interest in land or creating the relation of landlord and tenant, so that an assignment of the reversion would transfer a right of action, against the person described therein as lessee, for any breach of any stipulation therein.

The judge declined so to instruct the jury, but instructed them that the consent by the lessors once given, as herein set forth, and the acceptance of rent from Merrill, was a waiver of the covenant not to assign ; that the instrument declared upon was not a mere contract for lodging, as contended by the plaintiffs in review ; and that the assignment of the leasehold estate entitled the defendant in review to maintain the action, unless the plaintiffs in review were excused or released from their obligation in some other manner.

Upon the uncontroverted testimony, it appeared that the buildings in which the plaintiffs in review had their rooms were adjoining and connected together ; that they were divided up into suites of rooms, and the establishment was called the Bellevue ; that in No. 17 there was a public restaurant at which any one, whether having rooms at the house or not, could obtain meals according to its bill of fare, and at the prices thereon ; that the occupants of the suites of rooms in the Bellevue were not at liberty to have cooking done in their rooms, and were under no obligation to patronize the restaurant ; that usually the occupants of the rooms took their meals at the restaurant, but sometimes had their meals from the Parker House, near by, or got them elsewhere ; that the price of rooms was entirely independent of the price of meals, and the bills for meals were made out separate from the rent bills and paid at different times ; that usually a fee of twenty-five to fifty cents a meal was charged for serving a private table ; that serving a private table consisted in taking the meals ordered by an occupant to his room, furnishing the dishes, table, table-cloth, &c., and a waiter, if desired, and, when the meal was over, clearing off the table ; that, in the latter part of July, 1875, the restaurant was closed for repairs, and no cooking was or could be done in the house for four or five weeks ; that the Bellevue was situated in convenient proximity to several hotels and restaurants, from which meals could be obtained and brought to this house, among them the Parker House.

J. K. Porter testified that his family consisted of himself, his wife and daughter, and that he was influenced in taking these rooms by the fact that there was a restaurant in the house, as his wife was an invalid ; that on July 27, 1875, he went to the restaurant for his meals and found it closed and the door locked,

and that, on inquiry of the superintendent in charge of the house, he was told that it was closed for repairs, and would be for four or five weeks; that he went away, and no further conversation took place on that day; that his family had gone into the country on July 11 to spend the summer, and remained there until September 1; that on the next day he proceeded from his office to the Bellevue, and on the way met a friend, whom he invited to dine with him, although not feeling certain that he would be able to get any dinner, but desiring to have some one present to witness what took place; that, on arrival, he took a bill of fare of the restaurant, and from it gave an order to a servant for a dinner, and was told by the servant that the restaurant was closed, and that no cooking was done in the house, upon which he sent this servant to the superintendent to ask her if he could have dinner served in his rooms; that the servant brought back a message in substance that the superintendent said the restaurant was closed for repairs, that no cooking was done in the house, and no dinner could be furnished.

The servant testified that, when he was sent to the superintendent and returned, the message he brought and delivered to Porter was that the kitchen and restaurant were closed, and that no cooking could be done in the house, but that the superintendent would send to the Parker House and order the dinner for him if he desired it. Against the objection of the plaintiffs in review, the superintendent was permitted, after the servant had testified, being asked what the message given to the servant was, to testify to the terms of the message given to the servant, being the same message, in substance as the servant had testified he delivered it to Porter. This evidence was admitted merely as tending to show that the servant was authorized to deliver the message he testified he did deliver to Porter. To the admission of this testimony the plaintiffs in review excepted. It appeared that on leaving the Bellevue, after this message from the superintendent, Porter with his friend went to a house near by and had their dinner, which Porter ordered from the Parker House.

The plaintiffs in review requested the judge to instruct the jury that a stipulation for the service of a private table in a contract for rooms in a house, in which a public restaurant was a prominent feature, and to which the inmates were accustomed to

resort, would not be complied with by sending out for meals to a neighboring hotel or restaurant. The judge declined so to rule, and instructed the jury that the manner of compliance with such a stipulation would depend upon the situation of the house and all the surrounding circumstances; that if the house in which the plaintiffs in review had contracted for rooms and service of a private table was remote from other hotels or facilities for obtaining meals, or if evidence had been offered to show that the prices upon the bill of fare of the Bellevue had been more favorable to the plaintiffs in review than those of neighboring hotels, or that it would make any difference to an occupant to have the meals come from a neighboring hotel, the rule might be different; that, under the circumstances shown to exist in this case, the proximity of other hotels and restaurants in the immediate neighborhood was to be considered; that, if the jury believed the testimony of the witnesses for the defendant in review, that upon the request of the plaintiffs for a dinner to be served in their private room, an offer was made to send out and procure a dinner from a hotel in the vicinity and serve it in their room, which was rejected, they might regard that as a substantial compliance with the stipulations in the contract to serve a private table; and that, if no such offer was made, the verdict should be for the plaintiffs in review; otherwise, for the defendant in review.

The jury returned a verdict for the defendant in review; and the plaintiffs in review alleged exceptions.

*A. Russ & D. A. Dorr*, for the plaintiffs in review.

*D. E. Ware & J. Hewins*, for the defendant in review.

AMES, J. The written contract declared upon purports to be a lease, for a precise time and at a definite weekly rate, of certain specific rooms, so separated from all other rooms in the same house as to become in fact and in law the separate tenement of the lessees. It thus had the ordinary characteristics of a lease, and is not the case of a contract between the keeper of a boarding-house and a lodger. See *White* v. *Maynard*, 111 Mass. 250, in which this subject is fully discussed, and the authorities are collected and analyzed. The fact that, besides leasing the rooms, the lessor undertakes to furnish certain specific accommodations, and imposes certain restrictions as to the manner in

which the premises are to be occupied or used, does not change the essential character of the instrument. It was entirely at the option of the plaintiffs in review whether to take their meals at the restaurant on the premises or elsewhere, and their contract was not that of a boarder.

The original lessors gave their assent in writing to the assignment of the lease to Lewis. This assent was accompanied with certain "conditions," which Lewis in writing agreed to, and promised to fulfil. Whether these written stipulations created a condition in the strict technical sense, capable, if broken, of defeating the assignment, it is hardly necessary to consider. See *Huff* v. *Nickerson,* 27 Maine, 106 ; *Paschall* v. *Passmore,* 15 Penn. St. 295, 307. There is no evidence of any such breach, and the original lessors alone could take advantage of it, if any had occurred. Taylor on Landlord & Tenant, (5th ed.) § 492. The condition is that the lessors, and not any other party, may, in a certain contingency, enter and determine the lease. The assignment from Lewis to Merrill was sufficient to transfer the lease declared on and all rents that should thereafter accrue or become payable. There was evidence that the Porters had knowledge of this assignment; and the payment of rent to Merrill would be an acknowledgment of his title. The rulings requested by the original defendants, upon this part of the case, were properly refused ; and the instruction that the consent by the lessors once given, and their acceptance of rent from Merrill, amounted to a waiver of the covenant not to assign, was correct. The instrument declared upon was a valid lease, and its assignment to Merrill entitled him *primâ facie* to maintain the action. *Patten* v. *Deshon,* 1 Gray, 325.

The instructions given in regard to the stipulation for the service of a private table, and the question as to the sending out for meals to a neighboring hotel or restaurant, were carefully guarded, and appear to us to have been wholly unobjectionable. With regard to the message to the original defendants, the servant having testified that he delivered it, the court in its discretion might allow proof to be given as to what the message was as communicated to the servant, in order to show that he acted within the authority given him. *Exceptions overruled.*