## Mercantile Realty Co. v. Allen Edmonds Shoe Corporation
### (Decided Feb. 21, 1936).

DAVID R. CASTLEMAN for appellant.

STEINFIELD & STEINFIELD for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER —Affirming.

The Mercantile Realty Company asserted a landlord's lien for $2,720 on certain shoes valued at $1,526.70 and a small lot of shoe fixtures valued at $62.25, for use or rent of a building at 629 South Fourth street in Louisville, Ky., from July 20, 1932, to November 26, 1932, and, having been unsuccessful, it has appealed.

### The Facts.

On February 1, 1929, the Theatre Realty Company leased this building for a period of ten years to Bohr-

ers Men's Shop, Inc., for $625 per month, plus a charge for electricity actually used.

Later the Mercantile Realty Company became the owner of this property and the landlord under this lease.

In July, 1932, the Allen Edmonds Shoe Corporation of Belgium, Wis., consigned a stock of shoes to this men's shop under a paper which we shall give here with its paragraphs identified by letters which we have added for our convenience:

"(a) It is hereby agreed by and between the Allen Edmonds Shoe Corporation, of Belgium, Wisconsin, hereinafter known as the Party of the First Part, and G. C. Bohrer, 629 S. 4th St., Louisville, Kentucky, hereinafter known as the Party of the Second Part.

"(b) Party of the First Part hereby leases from Party of the Second Part a sufficient amount of space in the store and store windows for sale and fitting of Osteo-path-ik foot fitter shoes in Louisville, Kentucky.

"(c) Party of the First Part agrees to pay Party of the Second Part in full compensation for all services rendered including rental, etc. a commission of ten (10%) per cent for cash sales and twelve (12%) per cent for charge sales on the sale of all Osteo-path-ik foot fitters based on the prevailing retail price.

"(d) Party of the First Part agrees to furnish F. O. B. Belgium, to Party of the Second Part in full run of sizes on such stock numbers that are carried regularly in stock by Party of the First Part, and to keep these sizes replenished as regularly as is necessary to keep the stock in good condition.

"(e) Party of the First Part agrees to purchase the necessary insurance on the merchandise that the Party of the First Part consigns to the Party of the Second Part.

"Party of the Second Part agrees as follows:

"(f) First: That he will not offer for sale any other line of men's shoes.

"(g) Second: That he will furnish Party of the First Part a weekly report of sales on each Monday morning giving stock numbers, sizes, and widths of shoes and name and addresses of persons sold as it appears on the Second Party's records.

"(h) Third: That he will remit to the Party of the First Part for all sales, cash or the equivalent in check or money order each week, not later than Monday of the following week, and a full report with comments on the week's sales, the full amount of all cash sales less ten (10%) per cent rental and ten (10%) per cent compensation for salesmen, and that he will remit to the Party of the First Part on the tenth of each month for previous month's charge sales less twelve (12%) per cent commission and ten (10%) per cent compensation for salesmen.

"(i) Fourth: That he will at all times keep the merchandise in first class salable condition, and that all adjustments on imperfect merchandise will be left to the judgment of the party of the First Part.

"(j) Fifth: That he will at all times give good window display, with sufficient space to show, advantageously, all styles carried in stock for sale.

"(k) Sixth: That he distinctly understands that the merchandise belongs entirely to the Party of the First Part and he agrees to be responsible for the sale of same or the safe return of same to Party of the First Part's place of business.

"(l) This contract may be terminated by either Party giving to the other sixty days notice in writing.

"(m) In witness whereof, said Parties have duly executed this agreement this 28th day of July, 1932. A. D."

Later the Bohrer's Men's Shop, Inc., on November 26, 1932, was adjudged bankrupt.

A receiver was appointed, and the business of the shop continued.

On December 29, 1932, a trustee for the bankrupt

qualified, and as such soon discontinued the business as a going concern, but continued the occupation of the property until March 7, 1933, when the trustee surrendered the leased premises, and thus the shoes, etc., came into the possession of the Mercantile Realty Company along with the building.

### In the Meantime.

After this adjudication of bankruptcy, the receiver boxed these shoes, etc., and retained possession of them.

On December 7, 1932, the Allen Edmonds Shoe Corporation filed in the bankruptcy proceeding its petition for reclamation of property in the hands of the trustee.

Our appellant filed in the bankruptcy case its claim for rent from June 20, 1932, to November 26, 1932, and asserted a lien on these shoes, etc.

On March 3, 1933, in the bankruptcy proceeding an order was entered declining to take further jurisdiction of these shoes, etc., and declaring the Mercantile Realty Company might assert its lien against these shoes, etc., in such manner and forum as it saw fit.

Thereupon the appellant procured a distress warrant for its rent, and placed it in the hands of a constable who levied it upon these shoes, etc., and demanded an indemnifying bond, which appellant declined to give, and on March 17, 1933, the levy was released.

On March 21, 1933, appellee filed a proceeding against the Mercantile Realty Company under section 180 of the Civil Code of Practice, gave bond and took the shoes, and appellant declined to give bond for the retention of the shoes as may be done by section 188 of the Code, but filed an answer and counterclaim and asserted a lien on the shoes, etc., taken from it, and asserted a cause of action upon the bond executed pursuant to section 184 of the Code, by the execution of which the taking was accomplished. Its right to file a counterclaim is questioned, but, in view of the conclusion to which we have come, it is unnecessary to decide that question now.

The Allen Edmonds Shoe Corporation had made no contract with the Mercantile Realty Company, and owes nothing to the Bohrer's Men's Shop, Inc., on the contract made with it. No one has ever paid the $2,720 due to the Mercantile Realty Company for the rent of

this building from July 20, 1932, to November 26, 1932. which the Bohrer's Men's Shop, Inc., should have paid but did not.

## The Question.

Is there any lien upon the shoes, etc., of the Allen Edmonds Shoe Corporation that were in this store to secure the payment of the rent the Bohrer's Men's Shop, Inc., should have paid but did not pay?

The Mercantile Realty Company insists a lien for this rent and the right to its enforcement are given to it by section 2299 et seq., Ky. Stats., which can not be true unless this shoe company is its tenant, assignee, subtenant, or undertenant, if indeed then. See Bowling v. Garber, 250 Ky. 137, 61 S. W. (2d) 1102.

The case before us is controlled by the principles followed in Waller v. Morgan, 18 B. Mon. (57 Ky.) 136, where this is said:

"To create the relation of landlord and tenant no particular words are necessary but it is indispensable that it should appear to have been the intention of one party to dispossess himself of the premises, and of the other to enter and occupy as the former himself had the right to do, pursuant to the agreement between them."

Returning to the paper copied above, let us make a study of it and a study of the case of Waller v. Morgan, remembering that Waller in that case occupied the same position as the Mercantile Realty Company does here, while Guentz in that case was the principal tenant, just as the Bohrer's Men's Shop, Inc., is here, while the position of Morgan in that case is the same as the position of the Allen Edmonds Shoe Corporation here. We find that Bohrer's Men's Shop, Inc., no more parted with possession here than did Guentz there, and no more surrendered control than did Guentz there, and that the Allen Edmonds Shoe Corporation here had both less possession and control here than had Morgan there, and, Morgan having been held there not to be a subtenant, we must hold the Allen Edmonds Shoe Company not to be a subtenant here.

To constitute a tenancy of any kind, the tenant must get some definite control and possession of the premises. 35 C. J. p. 953, sec. 7; 16 R. C. L. p. 549, sec 20.

Section (b) of the paper copied gives to the shoe company a right to occupy sufficient space with its shoes for their proper exhibition, but it does not say where this shall be or give the shoe company any right to the possession or control of any part of this store. It was a mere license, just as Morgan had in the case supra. See, also, McCreery v. Clafflin, 37 Md. 435, 11 Am. Rep. 542; Howe Sewing Machine Co. v. Sloan, 87 Pa. 438, 30 Am. Rep. 376. 16 R. C. L. p. 1017, notes 3 and 4.

In McAdam on Landlord and Tenant (5th Ed.) sec. 64, the author says:

"The cardinal rule for the construction of such instruments is to ascertain the intention of the parties from an examination of the whole instrument, and that the mere use of the words 'lease,' 'let,' and 'landlord' is not determinative of such intent."

Thus we see that the use of the word "leases" in the above copied paper does not make it a lease. That is like the picture of the bear which we mentioned in Wood's Guardian v. New York L. I. Co., 224 Ky. 579, 6 S. W. (2d) 712. Returning to the work of Mr. McAdam, we find in section 44:

"When the use or occupation of premises is given for a special purpose, in which the owner is concerned, the owner retaining control and legal possession * * * no tenancy is created."

That is an exact picture of the case before us.

If there be no subtenancy, then certainly the Mercantile Realty Company has no lien on these shoes, etc. Property of third parties that may simply happen to be on the premises cannot be seized for rent. Fite v. Briedenback, 127 Ky. 504, 105 S. W. 1182, 32 Ky. Law Rep. 400; First Nat'l Bank of Hopkinsville v. Trimble, 229 Ky. 280, 17 S. W. (2d) 223; Sargent et al. v. Farrar's Assignee, 2 Ky. Law Rep. 212, 11 Ky. Opin. 2. To same effect see Electrical Research Products v. Ford, 227 Ala. 647, 151 So. 594. Thus there is no lien upon the baggage of a guest at a hotel for rent his host may owe to the owner of the hotel building. Mathews v. Livingston, 86 Conn. 263, 85 A. 529, Ann. Cas. 1914A, 195; Green v. T. A. Shoemaker & Co., 111 Md. 69, 73 A. 688,

23 L. R. A. (N. S.) 667. To same effect see **Porter v. Merrill**, 124 Mass. 534.

## What Was This Transaction?

This transaction was not a sublease but simply an arrangement by which these goods were consigned to this men's shop, to be by it displayed and sold with obligation on it to return them or to pay for them if it sold them. 6 C. J. p. 1091, sec. 7; 11 R. C. L. p. 757, sec. 8 et seq.

This case is somewhat like the case of Milwaukee Boston Store v. Katz, 153 Wis. 492, 140 N. W. 1038. There was in that case far more of the indicia of a lease than here, and at eighteen or more places it was referred to as a lease, yet it was held not to be a lease, but a bailment. The case of Porter v. Merrill, 124 Mass. 534, also holds a paper not to be a lease though so called in it.

## Other Questions.

For the purpose of eliminating some confusion we will add this:

In Sutton v. Perkins et al., 2 Ky. Law Rep. 233, 11 Ky. Opin. 76, the record discloses these facts. Perkins, etc., on April 16, 1877, leased to Brown and Hathaway a building in Owensboro, Ky., for five years at $700 per year, payable $58.33 monthly. On June 7, 1878, Brown and Hathaway sold their stock of goods to Sutton and rented the building to him at $580 per year, payable $48.33 monthly. Thus Brown and Hathaway lost $10 rent per month. Sutton paid to Perkins et al. $48.33 per month, but Brown and Hathaway did not pay the $10 per month they were to pay, so upon September 30 Perkins et al, sued out a distress warrant for the $80 rent then due and $700 rent for one year to become due. Sutton was an assignee of that lease. So that opinion does not apply to this case.

This case has been remarkably well briefed, and many other interesting questions are presented, but we do not regard their solution as necessary at this time.

Judgment affirmed.