**Kim D. LASTRA and Jon Douglas Lastra, Appellants,**

v.

**INTERCONTINENTAL INVESTMENTS COMPANY, INC., Respondent.**

**No. WD 39053.**

Missouri Court of Appeals,
Western District.

Dec. 22, 1987.

Application to Transfer Denied
March 15, 1988.

Robert D. Kingsland, Dempsey and Kingsland, P.C., Kansas City, for appellants.

Joseph Y. Decuyper, D. Bryant King, III, Kansas City, for respondent.

Before SHANGLER, P.J., and PRITCHARD and CLARK, JJ.

CLARK, Judge.

Appellants sued respondent claiming actual and punitive damages for failure of respondent to refund a security deposit paid in conjunction with the lease of an apartment. The issue in the case is whether § 535.300, RSMo 1986, limits the amount appellants may recover to twice the sum deposited and withheld.

The evidence, stated most favorably to appellants, established that on May 19, 1984, the parties entered into a lease of an apartment in Clay County. The term was one year from June 1, 1984 to May 31, 1985. At the time the lease was made, the apartment was occupied by another tenant and appellants were told that possession on June 1 was not assured. The lease was orally modified by agreement that possession would be delivered between June 1 and June 4 with rental pro-rated accordingly.

On May 30, 1984, appellants contacted the apartment manager with regard to a date for possession of the premises. They were then informed that the previous agreement could not be met and that the apartment would not be available until June 14. This was not acceptable to appellants who made arrangements for rental of accommodations elsewhere.

At the time the lease was made between appellants and respondent, appellants paid a security deposit of $300.00 to guarantee against damage to the apartment. The agreement provided that the deposit was refundable upon surrender of the premises if the tenant was not then in default. When appellants learned the apartment would not be available as promised, they requested a refund of the security deposit. The request was denied on the basis that the sum would be applied against rentals until the apartment was re-let. In fact, new tenants were obtained immediately with no loss of rentals to respondent. The security deposit was not tendered to appellants until September, 1985.[1]

Appellants filed a multi-count petition and had a jury trial. At the close of the evidence, the court sustained respondent's motion for a directed verdict as to the count for conversion of the deposit and struck a dependent count in punitive damages. The court ruled that appellants had not offered substantial, competent evidence of any misapplication of the security deposit, and further held the claim for a return of the deposit to be limited in damages by § 535.00, RSMo 1986. The remainder of the case was submitted to the jury for decision in accordance with the statute. A verdict for appellants in the amount of $600.00 was returned and judgment was entered accordingly.

Appellants present three points which collectively argue that the trial court erred in failing to submit their claims for actual and punitive damages in conversion and in sustaining respondent's motion for directed verdict. Although the trial court included a finding that appellants failed to make a case in conversion for want of proof of any misapplication of the funds, it is unnecessary to consider arguments on the merits of that ruling. The court's concurrent finding that appellants' cause of action was limited by § 535.300, RSMo 1986, was sufficient to support the decision. Whether appellants proved a diversion of the deposit to purposes other than that for which the deposit was given, as appellants discuss in the first point briefed, is immaterial.

---

1. The record is not clear as to whether appellants did receive payment of the deposit refund on the date mentioned by the witnesses or whether the late payment tender was refused. If payment was in fact made, then the jury verdict should have been reduced by that amount. Respondent makes no complaint of a duplicate recovery and we therefore do not consider the issue further.

In the relevant point, appellants say that § 535.300, RSMo 1986, does not preclude their recourse to a common law claim for conversion because the statute contains no express provision to this effect. The relevant portions of the statute read as follows:

Within thirty days after the date of termination of the tenancy, the landlord shall:

(1) Return the full amount of the security deposit; or

(2) Furnish to the tenant a written itemized list of the damages for which the security deposit or any portion thereof is withheld,....

Section 535.300.2, RSMo 1986.

If the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant shall recover as damages not more than twice the amount wrongfully withheld.

Section 535.300.5, RSMo 1986.

Security deposit is defined as meaning "any deposit of money ..., which is furnished by a tenant to a landlord to secure the performance of any part of the rental agreement, including damages to the dwelling unit." Section 535.300.7, RSMo 1986.

The gist of appellants' argument is that the statute applies only when a security deposit is wrongfully withheld and if appellants prove conversion by misapplication of the fund to an unauthorized purpose, that is a conversion not within the ambit of the statute, or at least not expressly included.

█ The primary purpose of all statutory construction and application is to ascertain the intent of the legislature. A statute is not to be subjected to such a strained or narrow interpretation of the language as to defeat the purpose of the enactment. *Cook v. Burke*, 693 S.W.2d 857, 861 (Mo.App.1985). If a statute gives a remedy in the affirmative for a matter which was actionable at common law, this does not take away the common law remedy. But where a new right or means to acquire the right are given and the statute also provides an adequate remedy, then the injured parties are confined to the statutory remedy. *Everett v. County of Clin-*

*ton*, 282 S.W.2d 30, 34 (Mo.1955); *see also Ridings v. Thoele, Inc.*, 739 S.W.2d 547 (Mo. banc 1987).

█ It is apparent from the language of § 535.300, RSMo 1986, that the rights of a landlord to receive and retain security deposits are sharply limited, both as to the period of time within which such deposits may be held and the purposes to which the deposits may be applied. For example, the statute precludes the taking of a security deposit in excess of two month's rent, it requires an itemization of any damages for which a deposit is claimed as indemnity and it entitles the tenant to notice and an opportunity to be present when damages are inventoried. The tenant is granted an absolute right to a refund of the security deposit within thirty days unless all or a portion of the deposit is withheld for the damages the statute specifies.

Section 535.300.5, RSMo 1986, also provides for the tenant's remedy in the event the landlord does not comply with the statute and make the refund. In that event, "the tenant shall recover as damages not more than twice the amount wrongfully withheld." Prior to enactment of this statute, a tenant in the circumstances of appellants could resort to a common law remedy for refund of a security or rent deposit by an action for conversion or for breach of contract and could recover only upon proof of the elements of the cause of action stated. The statute, however, has created a new right with respect to such claims rendering it unnecessary for a tenant to prove the common law elements of conversion or breach of contract. The tenant-claimant need only show that the deposit was not refunded within thirty days and that no itemized list of damages to which the deposit was applied has been furnished by the landlord. The subject of claims for refund of security deposits to tenants has been pre-empted by the legislative enactment which created the rights and obligations and limited the allowance of damages to not more than twice the amount of the deposit.

In the present case, appellants' claim falls squarely within the provisions of § 535.300, RSMo 1986. A refund of the deposit was due appellants on or before July 1, 1984. They did not receive the refund and no itemized list of damages was furnished by respondent. Appellants were entitled to judgment for twice the amount of the deposit, but no more. Appellants were confined to the statutory remedy and the trial court correctly so ruled. Whether appellants proved or could have proved a misapplication of the funds is immaterial.

The judgment is affirmed.

SHANGLER, P.J., concurs.

PRITCHARD, J., dissents in separate opinion.

PRITCHARD, Judge dissenting.

On May 11, 1984, appellants were informed that Jon's employer, Eastern Airlines, was transferring him and he was to begin work on May 30, 1984. On May 18 and 19, 1984, appellants, having travelled to Kansas City, visited several apartment complexes for a place to live, including respondent's Continental Apartment Complex. On the latter date, they entered a lease agreement with respondent for an apartment at 1921 N.E. 77th Street, and paid a $300 security deposit. The lease term was June 1, 1984 to May 31, 1985. Kim informed respondent's assistant manager, Bob Kintz, that they wished to move into the apartment before May 30, but he told her it would not be available until sometime between June 1 and June 4, so they made an oral agreement that appellants were to take possession between those dates with rent for June to be prorated.

With their belongings in a U–Haul truck, appellants returned to Kansas City on May 29, 1984, and the next day Kim contacted Kintz as to the specific date they could move in. She was informed that the apartment would not be available until June 14. She told Kintz that the agreement was for June 4, and that she and her husband were staying in a motel and living out of the U–Haul. Kintz and the apartment manag-

er told Kim that it was not possible to move in before June 14. Kim was referred to respondent's president, Gibson, who refused the request for expenses and told her that the deposit was not being returned because it was being used for rent until the apartment was re-rented. The security deposit was eventually returned on September 23, 1985.

Appellants' count for conversion and for punitive damages was removed from the case on motion for directed verdict, and upon the submission to the jury, a verdict for $600 was returned. The judgment entry recites that the judgment was entered for twice the amount of the security deposit pursuant to § 535.300 RSMo 1986 (effective September 18, 1983). Appellants here contend that the trial court erred in sustaining the motion for directed verdict on the conversion claim and for punitive damages, and they asked for a new trial on those issues.

The evidence here clearly shows that respondent breached its lease agreement with appellants in failing to deliver possession of the apartment upon the orally modified date of June 4, 1984, which was acquiesced in by appellants. On May 30, 1984, Kim was informed that they could not take possession until June 14, and was then told by Gibson that the security deposit was not being returned, as she requested, because it was being used for rent until the apartment was re-rented. Significantly, as the evidence shows, the instant apartment was re-rented two days later, June 1, 1984, to Kenny and Cindy Paul, at the same monthly rental, and the Pauls paid their security deposit on their lease. These facts show that the initial lease agreement between appellants and respondent was mutually cancelled or rescinded by them before any inception of possession or occupancy. Thus, there was no obligation on the part of appellants to pay any rent thereafter, and the retention of their security deposit thereafter could have been deemed to be wrongful by a jury, inasmuch as the apartment had been re-rented for the same initial term as appellants' lease, and there could be no right of set-off for

any unpaid rent, or for any damages occasioned by acts of appellants since they had never been in possession or occupancy of the premises.

A case in point is *Coleman v. Pioneer Studebaker, Inc.*, 403 S.W.2d 948 (Mo.App. 1966). There, plaintiff paid $5 and $50 as a deposit on a purchase of a used car and after paying the $50, the salesman gave him a receipt and told him the car he wanted had been sold. Plaintiff demanded his money back, but was told that he couldn't get it because the man who unlocked the safe was not there. Defendant's president, Livingston, initialed both receipts the next day and told plaintiff to go across the street to the cashier who would give him his money. On doing so, the cashier told him that the man who opened the safe was not there and he could not have his money. The cashier made other cash transactions during this time as noted by a police officer and plaintiff. Livingston was then standing a short distance away. The court said, page 951, "In any event it is beyond question that plaintiff's money was converted by the corporate defendant without even a scintilla of justification. The jury could also find that the defendant Livingston aided and abetted such conversion." As to the claim that punitive damages were erroneously awarded, defendant argued that the corporation claimed a right of set-off, but the court said there was no evidence of that claim. Nor was there any evidence that plaintiff owed Don Melching, defendant's officer, any money on a previous sale and repossession of a car. Thus, it is plain in the Coleman case that defendant retained the deposit for a car purchase for some purpose of its own, other than the specific purpose of a deposit for a specified used car, without any justification, once the specified car could not be delivered to plaintiff.

Another case is *Dillard v. Payne*, 615 S.W.2d 53 (Mo.1981). There plaintiff made a contingent fee contract for defendant attorneys to represent him. He paid them $300.00 into a "trust account" for the purpose of paying costs expended in the legal action. Defendants withdrew without filing the suit, and attorney Payne notified plaintiff that $290.00 held would be applied to Payne's attorney fees. The court held, page 55[1, 2] that " * * * conversion does not ordinarily lie for money represented by a general debt. (Citing cases.) However, the rule is otherwise as to funds placed in the custody of another for a specific purpose and their diversion for other than such specified purpose subjects the holder to liability in conversion." Cited for the last portion of the quotation is the *Coleman* case, supra; *Franta v. Hodge*, 302 S.W.2d 291 (Mo.App.1957) [where a real estate salesman, who did not tell the prospective purchasers he was the owner of a house, retained their $1,000 earnest money deposit. Plaintiff received judgment for actual damages in conversion, which was affirmed]; and *Scott v. Twin City State Bank*, 537 S.W.2d 641, 644–645[9] (Mo.App. 1976) [where a $95 insurance refund was used to reimburse respondent's $45.60 expenses in repossession of an automobile, the replevin and repossession being held to have been wrongful]. In the *Dillard v. Payne* and *Twin City* cases, supra, there was more specific evidence of diversion of funds from their specified purpose.

Nonetheless, as here, there was in other cases cited, a retention of a fund for other than the specified purpose was held to be a conversion because the retention was unjustified. In this case, respondent retained the $300 deposit on the spurious claims that it would be used for unpaid rent and for the tenants' damage to the premises, neither of which could be justified, as a jury might find. Thus, a claim of conversion would lie. The trial court erred in directing a verdict on this claim of appellants.

In Point II, appellants contend that the trial court erred in granting respondent's motion for directed verdict on their conversion claim on the basis that § 535.300, supra, limits their recovery in that the statute does not expressly or impliedly abrogate or nullify a common law claim for conversion. This statute, by Subd. 2, speaks of its application "Within thirty days *after the date of the termination of the tenancy*, the landlord shall: (1) Return the full amount of

the security deposit; or (2) Furnish to the tenant a written itemized list of the damages for for which the security deposit or any portion thereof is withheld, * * * ." Under Subd. 3(1), the security deposit may be withheld for only such amounts to remedy a tenants' default in the payment of rent due the landlord. In Subd. 5, it is provided, "If the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant shall recover as damages not more than twice the amount wrongfully withheld." [Italicized portions of the statute here emphasized.]

In Black's Law Dictionary, 1313 (5th ed. 1979), Tenancy is defined: "A tenancy involves an interest in realty which passes to the tenant, and a possession exclusive even of that of landlord, except as lease permits landlord's entry, and saving his right to enter to demand rent or to make repairs. *Layton v. A.I. Namm & Sons,* 275 A.D. 246, 89 N.Y.S.2d 72, 74, 75. *Possession or occupancy of land or premises under lease. Period of tenant's possession or occupancy. To constitute tenancy, tenant must acquire some definite control and possession of premises. Mercantile Realty Co. v. Allen Edmonds Shoe Corporation,* 263 Ky. 597, 92 S.W.2d 837, 839." [Italics added] See also definition of "Tenant" at p. 1314.

As noted this statute relates only to a wrongful withholding of a security deposit after the termination of a tenancy. It supplants, then, the statutory remedy in damages for the wrongful withholding of a deposit of twice the amount of a deposit, in lieu of the former action in conversion (and punitive damages) accruing *at that time,* not before. Appellants cite the case of *State ex rel. Tiller v. Bacon,* 637 S.W.2d 443 (Mo.App.1982), where Tiller alleged that in leasing premises, she deposited a security deposit which was to be returned to her at the termination of the lease if she did not violate its terms; that she did not violate the lease terms but was constructively evicted from the premises by the landlords. The court held that prohibition did lie to prevent the striking of Tiller's allegations, which were ordered reinstated

for trial thereon. Because of enactment of the statute replacing the action of conversion for one of statutory remedy of an action for recovery of a security deposit with double damages, where a tenancy has arisen the Tiller case is no longer viable. That does not mean, however, under the facts here, as a jury could determine, that a conversion occurred when respondent declined to return appellants' security deposit before any possession or occupancy was given, before any rent was due and when there could not be damage to the premises which they had never occupied, and thus no "tenancy" ever arose under the above definitions. See *DeLong v. Osage Valley Elec. Co-op. Ass'n,* 716 S.W.2d 320, 323[4] (Mo. App.1986), where it is said, "Conversion may be proved in one of three ways; (1) by tortious taking; (2) by any use or appropriation to use by the person in possession indicating a claim of right in opposition to the owner's rights; or (3) by refusal to give up possession to the owner on demand. (Citations omitted.)" The statute is therefore no bar to appellants' action because the statute, if in derogation of the common law, must be construed strictly, *Watkins v. Wattle,* 558 S.W.2d 705, 711 (Mo.App.1977); *Huff v. Union Elec. Co.,* 598 S.W.2d 503, 511 (Mo.App.1980), involved the question of whether Union Electric was an owner of premises upon which improvements were erected by independent contractors which would cause it to be excepted as a statutory employee under worker's compensation laws. The court said, "The issue is the common law liability of respondent, and the law must be strictly construed when existing common law rights are affected. *Harryman v. L & N Buick–Pontiac, Inc.,* 431 S.W.2d 193 (Mo. banc 1968). * * * If there is a close question, as there is here, the decision should be weighted in favor of retention of the common law right of action." If the legislature intended to abrogate the remedy of conversion in this situation, its purpose must be clearly and plainly expressed, 3 Sutherland Statutory Construction, § 61.01. Such a purpose is not here clearly and plainly expressed as to appellants' claim at the outset of their rela-

tion with respondent, which was before any tenancy arose.

Appellants lastly contend that the trial court erred in declining to submit their claim for punitive damages in connection with their claim for conversion. The conversion here was rather clearly proved. The question for the jury exclusively to determine is whether the conversion was malicious, Delong, supra, page 324[6], in the sense that it was the intentional doing of a wrongful act without just cause or excuse. *Ross v. Holton*, 640 S.W.2d 166 (Mo.App.1982). Appellants should have been allowed to submit their claim for punitive damages to the jury.

Some suggestion is made that respondent retained the security deposit (until September 23, 1985) because appellants' attorney gave it notice of an attorney's lien on the deposit. That fact would not prevent payment to the attorney and appellants, so the matter of a fee could then be settled between them.

The judgment should be reversed and the case remanded upon appellants' claim for conversion and for punitive damages.

For the reasons above stated, I dissent from the majority opinion.

Should any post-opinion motions in this court be resolved against appellants, they should thereafter apply to the Supreme Court for transfer of this case on the ground of general interest and importance of this case as to whether § 535.300 applies to the common law remedy of conversion which, under the facts, arose before a *tenancy* was created between the parties.