PROPERTY EXCHANGE & SALES, INC., Plaintiff–Appellant,

v.

Joseph KING, et al., Defendants–Respondents.

No. 63195.

Missouri Court of Appeals, Eastern District, Division Three.

Oct. 12, 1993.

D. Johnson, St. Louis, for plaintiff-appellant.

Richard C. Bresnahan, Clayton, for defendants-respondents.

PUDLOWSKI, Judge.

Property Exchange & Sales, Inc., (PESI), filed a five count petition against the landlords-defendants, alleging fraud, unlawful practices, wrongful failure to return a security deposit, breach of contract and prima facie tort. PESI appeals the trial court's dismissal of Counts I, II, IV and V. We affirm.

This case comes to us on appeal for the third time. The litigation leading to these appeals involves PESI's claim that the defendants failed to return a security deposit for a townhouse. After amendment, Richard Jacobs as assignee of PESI, brought the original action. Jacobs, who filed the petition, was not a licensed attorney. We affirmed the trial court's dismissal of the action, holding that a corporation's assignee could not bring suit on behalf of a corporation without representation by a licensed attorney. *Property Exchange & Sales, Inc. v. Bozarth*, 778 S.W.2d 1 (Mo.App.E.D.1989).

Jacobs subsequently reassigned the rights to the cause of action to PESI, who filed another petition. In Count I, PESI alleged that the defendants made certain fraudulent representations regarding a $520 security deposit for a townhouse in St. Louis County.

**14**

PESI alleged that prior to Dec. 29, 1984, the townhouse was rented to a third party and that PESI wanted to sublet the premises. PESI also alleged that the defendants agreed that PESI could "take over" the premises if it signed a new lease. PESI alleged further that if it returned the townhouse in the same condition as when the lease was signed the defendants promised to refund the security deposit, that PESI did return the townhouse in the same condition and that the defendants failed to return the deposit. In Count II, PESI alleged similar facts and based its theory on alleged violations of the Merchandising Practices Act, ch. 407, RSMo 1986.[1] PESI also alleged in this count that the defendants refused to refund an undisputed portion of the security deposit unless PESI signed a release relinquishing all claims against the defendants arising out of the lease. Count III was based on a theory of wrongful failure to return a security deposit pursuant to § 535.300. In Count IV, PESI alleged a breach of contract theory based on the defendants' alleged failure to return the entire security deposit and failure to return an undisputed portion unless PESI signed the release. In Count V, PESI alleged a theory of prima facie tort. PESI based this count on defendants' alleged failure to return an undisputed portion of the deposit unless PESI signed the release. In all counts, PESI prayed for actual damages and for Counts I, II and V, $10,000,000 respectively, in punitive damages.

After this petition was filed, defendants filed a motion to dismiss arguing that the cause of action and issues were identical to the first lawsuit and could not be relitigated because of the doctrines of res judicata and collateral estoppel. The trial court sustained defendants' motion to dismiss. We reversed and remanded, holding that because dismissal of the first action was for failure to have a licensed attorney, the issues were not resolved on the merits and therefore the doctrines of res judicata and collateral estoppel did not bar a subsequent action. *Property Exchange & Sales, Inc. v. King*, 822 S.W.2d 572 (Mo.App.E.D.1992). During this appeal, defendants argued that PESI was confined to a statutory remedy and that four of the counts were not based on that remedy. We declined to affirm the trial court's dismissal on this ground because it was not presented or supported in the defendants' motion to dismiss. *Id.* at 574.

After remand, defendants filed a motion to dismiss Counts I, II, IV and V, with prejudice, on the grounds that § 535.300 provides the exclusive remedy for wrongful failure to return a security deposit. The trial court sustained the defendants' motion and subsequently dismissed Count III, without prejudice, for failure to prosecute the action. PESI appeals the dismissal of Counts I, II, IV and V. PESI argues that the legislature did not intend to bar claims that are ancillary and unrelated to the wrongful withholding of a security deposit and that § 535.300 does not apply to PESI because of its corporate status.

In determining the sufficiency of a petition to which a motion to dismiss is directed, we give the petition its broadest intendment treating all alleged facts as true. *Johnston v. Norrell Health Care*, 835 S.W.2d 565, 567 (Mo.App.E.D.1992). We construe the allegations favorably to plaintiff to determine whether they invoke principles of substantive law and inform defendant of what plaintiff will attempt to establish at trial. *Id.*

Section 535.300.5 provides: "[i]f the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant shall recover as damages not more than twice the amount wrongfully withheld." The primary purpose of statutory construction is to ascertain the legislature's intent. *Lastra v. Intercontinental Investments, Co.*, 745 S.W.2d 703, 705 (Mo.App. W.D.1987). A statute's language should not be subjected to such a strained or narrow interpretation as to defeat the purpose of the enactment. *Id.*

In *Lastra*, the court considered whether § 535.300 limited appellants' action for conversion of a security deposit. The court recognized that where a new right or means to acquire the right are given and the

1. All statutory references are to RSMo 1986 unless otherwise indicated.

statute also provides an adequate remedy, then the injured party is confined to the statutory remedy. *Id.* Because § 535.300 created a new right and provided an adequate remedy for tenants when a landlord wrongfully fails to return a security deposit, the court held that the appellants were confined to the remedy provided in § 535.300.5 and could not maintain an action for conversion. The subject of claims for the refund of tenants' security deposits was preempted by the legislative enactment which created the rights and obligations and limited the allowance of damages to not more than twice the amount of the deposit. *Id.* Likewise, PESI's claims [2] are limited by the statutory remedy provided in § 535.300.5.

PESI argues its claims are ancillary and unrelated to the defendants' alleged wrongful failure to return the deposit. We disagree. In Count I for fraud, PESI alleged that the defendants made certain fraudulent representations concerning the deposit. In Count II for unlawful practices, PESI alleged similar facts and that the defendants refused to refund a portion of the deposit unless PESI signed a release. Count IV was based on a theory of breach of contract and alleged similar facts as in Count II. In Count V, PESI alleged a theory of prima facie tort based on the defendants' alleged failure to return the deposit unless PESI signed the release. In all counts, PESI prayed for in part, the return of the $520 security deposit. These four counts are neither ancillary nor unrelated to the security deposit as they all have as their common nucleus of operative fact the defendants' alleged wrongful failure to return the deposit. The statute provides tenants with their exclusive remedy when a landlord wrongfully withholds a security deposit. *Battis v. Hofmann,* 832 S.W.2d 937, 940 (Mo.App.W.D. 1992).

PESI also contends that § 535.300 is not applicable because of its corporate status. According to PESI, the statute was enacted for residential tenants and because PESI is a corporation its remedies are not limited by § 535.300. We disagree.

In its petition, PESI alleged that it had leased a townhouse from the defendants. Section 535.300.7 provides: "the term '**security deposit**' means any deposit of money or property, however denominated, which is furnished by a tenant to a landlord to secure the performance of any part of the rental agreement, including damages to the **dwelling unit.**" (second emphasis added). In § 535.-300, the term "dwelling unit" is also used in three other instances. § 535.300.3(2); § 535.300.4 (twice). Chapter 535 does not define "dwelling unit" but an instructive definition is found in Chapter 441, which is titled Landlord and Tenant. Section 441.500.(5), RSMo Cum.Supp.1992 defines a "dwelling unit" as "every premises or part thereof occupied, used, or held out for use and occupancy as a place of abode for human beings, whether occupied or vacant." We interpret words within a statute according to their plain and ordinary meaning. *Burke v. Kehr,* 826 S.W.2d 855, 859 (Mo.App.E.D.1992). It is clear, without a precise definition, that a townhouse is a "dwelling unit." PESI's rental of a townhouse is therefore subject to the provisions of § 535.300.

Finally, defendants ask this court to find that PESI's appeal is frivolous and to award damages. Rule 84.19. An appeal is frivolous if it presents no justiciable question and is so devoid of merit that there is little prospect the appeal can succeed. *In re Estate of Voegele,* 838 S.W.2d 444, 446 (Mo.App. E.D.1992). Awarding damages for a frivolous appeal is a drastic remedy, which should be exercised only with caution. *Id.* Although we rejected PESI's arguments, they are not so devoid of merit as to justify finding them frivolous.

The trial court's dismissal of Counts I, II, IV and V is affirmed.

SIMON, P.J., and STEPHAN, J., concur.

---

2. We note that a private party cannot maintain a civil action pursuant to § 407.025, upon which PESI bases Count II, when the transaction at issue involves residential rental property. *Detling v. Edelbrock,* 671 S.W.2d 265, 272–273 (Mo. banc 1984).